MONROE, J.
On April 2, 1907, plaintiff and defendant entered into a written contract, whereby it was agreed that plaintiff should “cut, haul, raft and deliver,” to defendant, or its agent, at West Monroe, “during the remainder of the floating season of 1906 and 1907, all the pine timber that may be cut, hauled, floated out, rafted, or all the pine timber that may be handled,” by him between the date of the contract and August 1, 1907, not to be less than 1,000,000 feet; same to be delivered above the mill of defendant, securely tied to the bank of the river, and each stick branded “S. E. W.” *845 Plaintiff guaranteed that all the timber should be “well rafted and in good floating condition at the time of delivery,” and that it should be new, good, sound, merchantable, pine logs, free from wormholes and red, or rotten, hearts. Defendant agreed: That it would not go, or send its purchasing agent, “on the Bayou D’Arbonne or on the Ouachita river, below Alabama landing, to buy logs, during the time mentioned” in the contract; that it would leave that territory exclusively to plaintiff, provided that plaintiff would buy and secure all the merchantable pine logs that were put into the D’Arbonne bayou or Ouachita river and rafted and offered for sale, even if he had to pay as much for them as his full contract price. Defendant agreed to buy said timber from plaintiff at $8 per 1,000 feet, Doyle scale, payment to be made, $100 cash (acknowledged to have been advanced), and the balance when the logs should be received by defendant, above its mill, and scaled. And there are some other stipulations which are immaterial to this case. This suit was brought in September, 1908, and plaintiff alleges: That defendant received about 600,-000 feet of timber, under the contract, and appeared ready to receive all that he could deliver, prior to August 1, 1907; but that on November 2, 1907, it declined to receive anymore; that in July, after the water in Bayou D’Arbonne and in the Ouachita river had fallen too low to permit the floating of logs in those streams, defendant refused' to pay $900 for logs which had already been delivered, on the ground that it feared that he (plaintiff) would not deliver, when high water came again, other logs, which had been cut and rafted; that it was only when he promised that he would make such deliveries that defendant paid over the sum mentioned; that, when notified that defendant would not receive any more timber, he had already cut, hauled, and rafted 633,518 feet, according to contract, and was ready to deliver it; and that, in consequence of defendant’s refusal to receive it, he was obliged to sell it at a loss, including extra expense incurred of $1,649.57, to which should be added $500, as punitive damages, making a total of $2,-'149.57, for which he'prays judgment, with interest.
Defendant answers: That it agreed to take all the timber that was cut, hauled, floated, and rafted, or handled by plaintiff, between the date of the contract and August 1, 1907, and delivered, between those dates, above its mill in West Monroe, tied to the banks of the river and branded with the letters “S. E. W.,” and to pay for same at the rate of $8 per 1,000 feet, Doyle scale, as delivered, save $100, which was advanced; that the time at which the timber was to be delivered was of the essence of the contract; that it was during the “remainder of the floating season of 1906 and 1907,” and not later than August 1, 1907; that within that time plaintiff delivered 915,252 feet of merchantable ■ timber, the price of which, at the rate agreed on, was $7,313.18; and that the same was paid in full. Defendant denies that it refused to receive any timber tendered in accordance with the contract, and alleges that it complied with all of its obligations thereunder.
It is shown, and plaintiff admits it in th§ testimony, that the term, or expression, “remainder of the floating' season of T906 and 1907,” as used in the contract sued on, meant the remainder of the season of high water in the Ouachita river, which season had begun in the fall, or winter, of 1906, and was expected to end about August 1, 1907; and which, as a matter of fact,-did end about August 10, 1907, after which date the water was too low for the floating of logs. It is also shown that • defendant accepted and paid, at the contract price, for all'logs' that were delivered by plaintiff, at the place- of *847 delivery and within the' time specified in the contract; the last delivery having been made on July 31st, and the last payment on August 7th, and that thereafter no other logs were tendered, until some time in December, when defendant was given to understand that plaintiff had a lot of logs which had been cut upon a tributary, or tributaries, of Bayou D’Arbonne, perhaps 80 miles from the mouth of the bayou, and had not been brought out until after the floating season of 1906-07 was over and the season of 1907-08 had begun, and hence were not available for the purposes of the contract on which this suit is brought. Either for that reason, or for the reason that, having been in the water since the previous floating season, they were not considered “new” logs, or because, at that time, they were not needed by it, defendant declined to receive them, a course which we agree with the judge a quo in thinking it was authorized to pursue.
The judgment appealed from is therefore affirmed, at the cost of the plaintiff.